GIANELLA, Respondent, vs. BIGELOW and others, Executors, imp., Appellants.

*April 12 — April 30, 1897.*

*Estates of decedents: Banks and banking: Individual liability of stockholders: Jurisdiction: Equity: Parties: Constitutional law: Circuit and county courts: Judgments: Executions.*

1. Upon the death of a stockholder in a bank his statutory liability for the debts of the bank under sec. 47, ch. 479, Laws of 1852 (S. & B. Ann. Stats., p. 1228), survives in respect to his estate in the hands of his personal representatives, and may be enforced, without an assignment of the stock to them on the books of the bank, to the extent of the assets received by them.

| | |
|---|---|
| 96 | 185 |
| 96 | 518 |
| 97 | 564 |
| 96 | 185 |
| 101 | 603 |
| 96 | 185 |
| 105 | 102 |
| 96 | 185 |
| †106 | 264 |
| †106 | 265 |
| 106 | 568 |
| 106 | 630 |
| 96 | 185 |
| 108 | 530 |
| 96 | 185 |
| 109 | 152 |
| 96 | 185 |
| 111 | ⁵646 |
| 111 | ²651 |
| 111 | ⁵653 |

Gianella vs. Bigelow and others.

2. The statutory liability of a stockholder for the debts of a bank under sec. 47, ch. 479, Laws of 1852 (S. & B. Ann. Stats., p. 1228), is a liability of all the stockholders to all the creditors, on the principle of copartnership, and can be enforced only by proceedings in equity, to which the bank and all its stockholders must be made parties unless it is impossible or impracticable to bring them all before the court.

3. The power of the legislature to take away the jurisdiction of the circuit court in legal or equitable actions is not absolute, but is subject to the condition that a substantial remedy must be conferred on some tribunal of competent and adequate jurisdiction. *Lannon v. Hackett*, 49 Wis. 261, limited and explained.

4. The power of county courts to enforce the statutory liability of stockholders of a bank against the estate of a deceased stockholder in the regular course of administration is inadequate since they have no authority to bring in the bank or the other stockholders whose presence is necessary to a complete determination of the liability. The jurisdiction of the circuit court over such proceedings was therefore not taken away by sec. 3845, R. S., conferring exclusive jurisdiction over the administration of estates upon the county court; nor would a recovery therein be barred because the action was commenced after the expiration of the time for the presentation of claims in the county court under sec. 3844.

5. After the amount of the claim in such a case has been established in the circuit court, no execution can be awarded on the judgment, but the judgment must be certified to the county court to the end that the claim established by it be paid as a claim against the estate in the order prescribed by law.

APPEALS from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed in part; reversed in part.*

This action was brought against the Plankinton Bank; William Plankinton and Anna B. Plankinton, trustees of the estate of John Plankinton, deceased; *Frank G. Bigelow, H. A. J. Upham,* and *Caroline E. James,* executors of the last will and testament of Charles J. Cary, deceased; *Hugh Ryan* and *John B. Le Saulnier,* executors of the last will and testament of William Sanderson, deceased; and others, stockholders in said bank,— by the plaintiff, for the benefit of himself and all other creditors of said bank, and

all persons to whom it was indebted on the 1st day of June, 1893, at which time it made an assignment for the benefit of creditors to the defendant William Plankinton, as assignee, and thereupon ceased to do business.

The plaintiff alleged, among other things, that at the time of said assignment the Plankinton Bank was, and still is, indebted to him in the sum of $1,009.48, except that dividends to the amount of thirty per cent. have been paid by its assignee; that the capital stock of the bank was $200,000, and at the date of the assignment was held, in different amounts, by the various defendants named therein (among others, $5,000 by *Frank G. Bigelow*, *H. A. J. Upham*, and *Caroline E. James*, as executors of the last will and testament of Charles J. Cary, deceased, and $3,000 by *Hugh Ryan* and *John B. Le Saulnier*, as executors of the last will and testament of William Sanderson, deceased); that each of said stockholders is liable, in a sum equal to his aforesaid amount of stock, for the indebtedness of said bank, under the provisions of the general banking law, and that the action is brought to enforce such liability for the benefit of the creditors of said bank; that the assets remaining in the hands of the assignee are insufficient to pay its indebtedness in full, and that full payment of the liability of the stockholders, under the provisions of the banking law aforesaid, is required for the liquidation and payment in full of the indebtedness of the bank; that the assignee has paid dividends to the amount of thirty per cent. on such indebtedness, and the assets remaining in his hands are, to a large extent, of such a character that they cannot be immediately turned into cash, so that a long time will be required for the purpose of converting them, they consisting largely of real estate and real-estate securities; that the assignment of said bank, and all proceedings under the same, are under the supervision and control of the circuit court for Milwaukee county, and all the creditors of said bank are required to

Gianella vs. Bigelow and others.

prove their claims in and under the direction of that court,. and that all claims and demands against the bank have been proved and adjusted, and are now of record therein; that. immediate payment of the liability· by the stockholders of said bank was necessary, and should be required. The plaint-iff prayed judgment that the said stockholders in said bank be required, each of them, forthwith to pay the amount of their respective liabilities as stockholders; that a receiver be appointed, authorized to collect and receive such pay-ments, etc., and that he be authorized to make proof of claim for the same against the estates of Charles J. Cary, de-ceased, and of William Sanderson, deceased, if the amount. due from such estates is not otherwise paid by the respective executors; that he might have such further order or judg-ment as might be just and proper to enforce the liability of said stockholders of said bank for the benefit of the credit-ors of the same; and that the moneys received and paid be· distributed to them, upon their proofs of claims already filed; and for further and other relief.

The defendants *Frank G. Bigelow* and others, as execu-tors of Charles J. Cary, deceased, demurred to the complaint. upon the ground that it did not state facts sufficient to con-stitute a cause of action, that the court had no jurisdiction of the persons of the said defendants, and that the court had no jurisdiction of the subject of the action. The demurrer was stricken out, and the defendants answered, admitting· and denying various allegations of the complaint, and set-ting up certain defensive matter thereto, the substance of which will appear in the finding of the court; and the de-fendants *Hugh Ryan* and *John B. Le Saulnier*, executors of Sanderson, answered, in substance, in like manner.

The court at the trial found, among other things, the as-signment of the Plankinton Bank to William Plankinton, as. assignee, on the 1st of June, 1893, whereupon it ceased to do business, and that said assignee qualified and took charge

of the assets of the bank; the indebtedness of the bank in
$1,009.48, which had been reduced, by dividends paid to the
plaintiff by the assignee and receiver appointed in the action,
to fifty per cent. thereof; that the capital stock was $200,000,
$96,000 whereof was. held by Frederick T. Day, $5,000
thereof by the defendants *Frank G. Bigelow, H. A. J. Upham*,
and *Caroline E. James*, as executors of the last will and tes-
tament of Charles J. Cary, deceased, and $3,000 thereof by
*Hugh Ryan* and *John B. Le Saulnier*, as executors of the
last will and testament of William Sanderson, deceased, and
various sums. by other parties; that seven of said stockhold-
ers (naming them and the amount of their respective hold-
ings) had paid to the receiver the amounts of their respect-
ive liabilities as such stockholders; that the assignee of the
bank, together with the receiver in the action, had paid
dividends to the amount of fifty per cent. of the claims of
creditors, and fifty per cent. of said claims still remained
due; that the remaining assets of the bank, exclusive of the
stockholders' liability, were of such a character that they
cannot within a reasonable time be converted into money,
but that a long time will be required therefor, and such
assets are insufficient to pay the indebtedness of the bank
and the claims of said creditors, in whole, within a reason-
able time; that, while it was possible that such assets might
be sufficient ultimately for that purpose, it was not probable,
and the payment in full of the liability of the stockholders,
under the provisions of the banking law, is required for the
liquidation and payment in full of the indebtedness of the
bank.

It was further found that Charles J. Cary died testate,
March 1, 1892, leaving a last will and testament naming
*Frank G. Bigelow, H. A. J. Upham*, and *Caroline E. James*
his executors, and owning at the time of his death fifty
shares of the capital stock of said bank, of the par value
of $5,000, standing in his name on the books of the bank;

that letters testamentary were issued to them by the county court of Milwaukee county on May 9, 1892, and that said executors, as such, are the holders and owners of the said capital stock; that they have never received any dividend thereon, nor voted or done any other act as such holders; except to inventory the same and cause it to be appraised; that on the 9th of May, 1892, the county court of Milwaukee county made an order, in the matter of the settlement of said estate, pursuant to the statute, requiring creditors of said Cary to present their claims against him for examination and allowance on or before the first Tuesday of December, 1892, which time was allowed and limited for that purpose, and that notice be given of the time and place at which such claims and demands would be received, examined, and adjusted; and that the notice of the time limited thereby for creditors to present their claims was duly given as provided by law, and on the 16th day of October, 1894, said county court rendered its final decision on all claims presented, and that no claim on behalf of the Plankinton Bank, or any of the creditors of said bank, or any other person, against said Charles J. Cary, on account of any liability by him as a stockholder of said bank, or otherwise, for its indebtedness, or any part thereof, was ever presented to said court or filed therein. And it was found, in like manner, that a like order in the matter of the estate of William Sanderson, deceased, who died in February, 1893, testate, was made by said county court on the 8th of March, 1893, requiring all creditors to present their claims and demands against said William Sanderson, for examination and allowance, on or before the first Tuesday of October, which was duly published, and that no claim, contingent or otherwise, had ever been filed against said estate by the plaintiff, or any other creditor of the Plankinton Bank, based upon any alleged liability of said deceased as a stockholder therein; that said *Ryan* and *Le Saulnier* had duly qualified

as executors, and entered upon the discharge of the trust, and ever since, as such executors, have been the owners of said thirty shares of the capital stock of the Plankinton Bank; that there was due and owing to the plaintiff and other creditors of the bank, from certain stockholders named, by virtue of, and under the provisions of, the banking act, the sums stated: From said *Bigelow* and others, executors of the last will and testament of Charles J. Cary, deceased, $5,000; from *Hugh Ryan* and *John B. Le Saulnier*, executors of William Sanderson, deceased, $3,000,— with interest on said several amounts from the 4th of December, 1894, and the costs of the action.

As conclusions of law, the court found that the plaintiff was entitled to the relief demanded in the complaint, in accordance with said findings; and it was adjudged, among other things, that the defendants *Bigelow* and others, executors of Charles J. Cary, deceased, out of the property and assets received by them, and in their hands as such, pay to Albert E. Fletcher, receiver in the action, for the benefit of the plaintiff and other creditors who had proved their claims, $5,000, with interest from the 4th of December, 1894, amounting to the sum of $5,479, to be collected by execution issued out of the court in the name of the plaintiff, in due form of law, to be levied, etc., from the property and assets received by his said executors and in their hands at the time of the commencement of the action, together with costs. A like judgment was given against the defendants *Hugh Ryan* and *John B. Le Saulnier*, executors of William Sanderson, deceased, for $3,287.49, to be collected by execution levied in like manner; and various other claims against stockholders were thereby established and adjudged.

The executors of Charles J. Cary appealed from the judgment so rendered against them, as did the executors of William Sanderson.

For the appellants there was a brief by *Wells, Brigham &*

*Upham* and *W. E. Black,* attorneys for the executors of Cary, and *Henry D. Goodwin,* attorney for the executors of Sanderson, and oral argument by *Mr. Black.*

For the respondent there was a brief by *Glenway Maxon,* attorney, and *Winkler, Flanders, Smith, Bottum & Vilas,* of counsel, and oral argument by *Mr. Maxon* and *Mr. F. C. Winkler.*

Pinney, J.   1. The liability sought to be enforced against the stockholders of the bank in this action is founded upon sec. 47, ch. 479, Laws of 1852 (1 S. & B. Ann. Stats., p. 1228), which provides that "the stockholders of every corporation or association, organized under the provisions of this act, shall be individually responsible, to the amount of their respective share or shares for all its indebtedness and liabilities of every kind;" and by sec. 22 of the act it is provided: "The shares of such association shall be deemed personal property, and shall be transferable on the book of the association; and every person becoming a shareholder by such transfer, shall, in proportion to his shares, succeed to all the rights, and be subject to all the liabilities, of prior stockholders."   It is argued that these executors are not within the liability of the statute; that they are not persons becoming shareholders by transfer of their shares to them on the books of the bank; and that they have no greater rights, and are subject to no greater liabilities, than if Cary and Sanderson each, in his lifetime, had executed to them an assignment of his stock; and that they could not become stockholders until a transfer of the stock was made to them on the books of the bank.   But this action does not proceed, as against these executors, upon the theory that they became stockholders, as between them and the bank, by purchase and transfer of the shares, or that by reason of their interest in and relation to the stock, in their representative capacities, they have become subject to any personal liability.   They have not assumed

or consented to any such position. The action is to charge them, in their representative capacities of executors, with the statutory liability which their respective testators in their lifetime were under, as shareholders of the Plankinton Bank, and through such executors to reach the estates of said deceased shareholders, in order to discharge the same. This liability of the shareholder does not die with him, but survives in respect to his estate in the hands of his executors or administrators. Thomp. Corp. § 3320. Upon the death of Cary and Sanderson the stock which stood in their names, respectively, on the books of the bank, was cast upon their personal representatives; and this liability remained against their respective estates, the same as any other liability or debt, to be enforced, through such personal representatives, by some court having adequate equity jurisdiction. To this end, no assignment of the stock is necessary, and their personal representatives continued the legal personality of the deceased stockholders. Lowell, Transfer of Stock, §§ 35–36. The case of *Cleveland v. Burnham*, 64 Wis. 357, in which the opinion was expressed that a transfer " on the books of the bank should be shown, upon which to found the liability," was in respect to the liability of the *purchaser* of stock, who took the same by transfer *inter vivos*, and not where it passed by bequest or operation of law. The title or interest of these executors is first for the purposes of administration, and then to execute the trusts upon which it was bequeathed to them, respectively; and they are chargeable in this action, for such liability, only to the extent of the assets severally received by them. 1 Cook, Stock (3d ed.), § 248; *Taylor v. Taylor*, L. R. 10 Eq. 477; *In re St. George Steam Packet Co., Hamer's Case*, 3 De Gex & S. 279; *Grew v. Breed*, 10 Met. 569; *Chase v. Lord*, 77 N. Y. 1; *In re Bingham*, 127 N. Y. 296.

2. The objections to the jurisdiction of the court, to the sufficiency of the complaint, and the contention that the

claims in suit against the estates of Cary and of Sanderson were barred by the statute of limitations, all rest upon the same grounds, and may be conveniently considered together. The nature of the liability of stockholders under the section of the banking law relied on, and the manner in which it must be enforced, came before this court at an early day, in a series of carefully considered cases, and the law was so fully and firmly settled that further discussion would be inappropriate and unnecessary. In *Coleman v. White,* 14 Wis. 700, which was an action at law by a single creditor against an individual stockholder to recover a debt due from the bank, the court said: "We are of the opinion that the liability is primary and absolute, and attaches the moment the debt is contracted by the bank; that it is a liability of all the stockholders, to all the creditors, on the principle of copartnership,— the stockholders standing on substantially the same footing as though they were partners, save only that the responsibility of each is limited to a sum equal to his share or shares of stock. Subject to this limitation they are answerable as original or principal debtors, and their liability more nearly resembles that of copartners than any other with which it can be compared." As to the remedy, the court said: "We are persuaded that the remedy should be by suit in equity, in which all the creditors should join, or one or more should sue for the benefit of all, and that the action should be against the bank and all the stockholders, unless it be impossible or impracticable to bring them all before the court, or some other cause for the omission be shown;" that this conclusion followed necessarily "from the nature of the obligation imposed, it being a liability on the part of all the stockholders, in proportion to the amounts of their respective shares, to all the creditors, according to the sums severally due them. It is an indebtedness which a court of law has no power to regulate and adjust, and to which the jurisdiction and powers of equity are peculiarly

and exclusively adapted." 1 Cook, Stock (3d ed.), § 222; *Arthur v. Willius*, 44 Minn. 409; *Walsh v. M., C. & N. W. R. Co.* 2 McCrary, 156; *Umsted v. Buskirk*, 17 Ohio St. 113; *Hadley v. Russell*, 40 N. H. 109; *Erickson v. Nesmith*, 46 N. H. 371. This view of the liability and remedy under this statute has been ever since strictly maintained. In *Cleveland v. Marine Bank*, 17 Wis. 545, it was held that the suit, which was framed as indicated, might be maintained without a judgment having been obtained at law against the bank. And subsequently, in *Merchants' Bank v. Chandler*, 19 Wis. 437, it was held that a judgment creditor of the bank, whether or not he had docketed his judgment and issued execution against the real estate of the bank, might maintain the action, in behalf of himself and all other creditors who may choose to become parties thereto, against the bank, jointly with the stockholders, to reach and apply its assets and enforce the liability of the stockholders. There is at this time no ground for question as to the nature of the liability, or that it can be enforced only in equity; and it is equally well settled that the bank and all its stockholders must be parties defendant, unless it is impossible or impracticable to bring them all before the court.

3. It is contended that the liability in question, upon the facts stated in the record, can be enforced only in the county court of Milwaukee county, in the regular settlement of the estates of the said deceased testators, and that as a time had been fixed in which creditors of the respective testators might present their claims against them for allowance, and notice of such limitation, and of the time of hearing proofs of claims, had been given, the circuit court was prohibited by the statute (R. S. sec. 3845) from entertaining jurisdiction of these claims. This section provides: "No action shall be commenced against an executor or administrator, excepting actions for the recovery of specific real or personal property, or actions to establish, enforce or foreclose a lien or

Gianella vs. Bigelow and others.

right of lien on real or personal property, . . . until the expiration of the time limited for the payment of debts. Nothing in this section shall prevent any person having a lawful claim against a deceased person from bringing an action therefor against the executor, administrator, heir, devisee or legatee of such deceased person, when no time has been fixed in which creditors may present their claims against the deceased for allowance, or when no notice of such limitations has been ordered or given." By sec. 3844: "Every person having a claim against a deceased person, proper to be allowed by the court or commissioners, who shall not, after notice given as required by section 3839, exhibit his claim to the court or commissioners within the time limited for that purpose, shall be forever barred from recovering such demand, or from setting off the same in any action whatever."

The relief demanded and given against these executors is for the payment of money, and it is argued that the complaint fails to state a cause of action, in that it is not alleged that no time had been fixed within which the creditors might present their claims for allowance, or that no notice of such limitation had been ordered or given, and that the judgment, therefore, is not warranted by the pleadings and findings. In *Price v. Dietrich*, 12 Wis. 626, and *Ernst v. Nau*, 63 Wis. 134, which were actions brought for the recovery of legal demands, the statutory prohibition in sec. 3845 against bringing actions against executors or administrators except in the cases therein specified was applied, and it was held that the remedy in the county court by presentation and proof of such claims is exclusive.

The case of *Lannon v. Hackett*, 49 Wis. 261, was an action brought by a surviving partner against the executor of his deceased partner, his widow, and his heirs at law, for an accounting for moneys received by the deceased partner in his lifetime, the proceeds of partnership property, to two thirds

of which the plaintiff was entitled, but no part of which had been paid to him; and judgment was sought that the executor of the deceased partner should pay the amount found due him. on such accounting. The widow and heirs at law were made parties defendant only as being interested in the assets in the executor's hands, and no attempt was made to charge them personally, or to establish a lien on any real estate that had come to them. In brief, the only relief which the plaintiff asked was a judgment for the payment of money only, against the executor of the deceased partner. The cause of action was clearly for equitable relief, and it was not essential to the adjudication of the claim in the county court that any other party should be brought before it. The presence of the claimant and of the executor was sufficient to give that court jurisdiction to adjudicate the claim. After a careful examination of the powers and jurisdiction of the county and circuit courts in relation to claims against the estates of persons deceased, in view of the fact that county courts had equitable jurisdiction, it was held that the provisions of the statutes under consideration applied to equitable as well as to legal claims, and that equitable claims not presented within the time limited by statute, and proved, would in like manner be barred. It was said in that case: "The fact that the claim is one which can be enforced in a court of equity alone is no reason for proceeding in the circuit court. The county court has ample power to determine equitable as well as legal claims. The only exceptions are those expressly mentioned in the statutes, and possibly *actions to ascertain an equitable claim and then enforce it* as a lien upon specific personal property or real estate which may have come to the hands and possession of the executor or administrator as a part of the estate of the decedent." It was further said that "of the power of the legislature to take away the jurisdiction of the circuit court in actions to charge the estates of deceased persons with the payment of the debts

of the decedent, there can be no doubt;" that, "if the legislature can take away its jurisdiction as to cases at law, it can as to cases in equity." Accordingly it was held that as the plaintiff had not shown that no time had been fixed by the county court within which creditors might present their claims, or that no notice of hearing had been given, as required by statute, he had failed to show any reason for bringing his action in the circuit court, and, the subject matter of the action being within the exclusive jurisdiction of the county court, the complaint was held fatally defective, and that there could be no recovery.

It is material to observe that this decision expressly recognizes the fact that there may be implied exceptions, in addition to those specified in the statute, in respect to certain equitable causes of action, as instanced in the opinion; that the language, though very broad and general, must be taken and considered with reference to the case then before the court; and that the decision cannot be fairly held controlling upon facts or conditions not presented and evidently, therefore, not within the mind of the court. The power of the legislature to take away the jurisdiction of the circuit court in legal or equitable actions is not absolute, but is subject to the condition that a substantial remedy must be conferred on some tribunal of competent and adequate jurisdiction.

In *Hasbrouck v. Shipman*, 16 Wis. 296, the court, speaking of the power of the legislature to change, modify, or alter the laws governing proceedings in courts of justice, both in respect to past and future contracts, stated: "The rule extracted from the cases was that this power was unrestricted so long as a substantial remedy was afforded according to the course of justice as it existed at the time the contract was made. But the legislature must give some remedy, and not destroy the legal force and obligation of a contract, taking away all existing remedies." *Von Baumbach v. Bade*,

9 Wis. 559; *Morse v. Goold*, 11 N. Y. 281; *Bronson v. Kinzie*, 1 How. 311; *McCracken v. Hayward*, 2 How. 608; *Curran v. Arkansas*, 15 How. 304.

To give this legislation the construction and effect upon which the defendants insist, would render it unconstitutional, as applied to equitable causes of action, such as are stated in the complaint, where various parties necessary to litigate and determine them cannot be cited and brought before the court. In the present case the county court had no power to cite and bring before it the bank, or its assignee, or any of its numerous stockholders, without whose presence the question of the liability of the estates of Cary and of Sanderson, or of their executors in their representative capacity, for these claims, could not be considered and determined, within the rule laid down in *Coleman v. White*, 14 Wis. 700, and other cases cited. The court certainly did not, in *Lannon v. Hackett*, 49 Wis. 261, intend, even by the broad and general language used, to hold that the jurisdiction of the circuit court in *all* equitable claims or demands was taken away by the statute, except as therein stated, but simply that such would be the result as to all claims, whether legal or equitable, that could be effectively litigated in the county court, and in respect to which its jurisdiction is complete and adequate to the ends of justice; in other words, that the provisions of secs. 3844 and 3845 apply only within the legal competency of their jurisdiction. The case of *Lannon v. Hackett* must therefore be understood accordingly. The case of *Bostwick v. Estate of Dickson*, 65 Wis. 593, was for a money demand due from the estate of Dickson by reason of an express trust, and no other parties than those already before the court wherein the claim was filed were necessary to litigate it.

The law does not require a party to do a vain thing. There is no reason for saying that a claimant is bound to present his claim to a tribunal for allowance, which has no

Gianella vs. Bigelow and others.

power to adjudicate it, or, failing to do so, that he shall be barred of his rights. Although the ordinary jurisdiction of courts of equity over administrations has been taken away and conferred on probate courts, or has become obsolete, yet there still remains an auxiliary or supplementary jurisdiction, to be exercised in exceptional cases, where the jurisdiction of the probate court is confessedly inadequate, or has been found insufficient, and "the jurisdiction over estates, interests, and primary rights, purely equitable, and to administer equitable remedies, is nowhere lost merely because the interest, right, or remedy grows out *of, or is connected with, the estate of a deceased person which is in the course of administration, even though the administration proper, the accounting and final settlement, are carried on under the exclusive jurisdiction of another tribunal. In all such cases, however, the jurisdiction must, of course, be based or grounded upon some distinctive and independent ground of equitable cognizance, and its exercise may then result in a remedy which is a material aid to a pending administration, or which removes an impediment from the final settlement of the estate." 1 Pomeroy, Eq. Jur. §§ 347–351. And it is no objection to the jurisdiction that when the rights of the plaintiff shall have been determined the judgment will have to be executed by the county court in probate, in the manner directed by the statute. *Catlin v. Wheeler*, 49 Wis. 507, 520.

The jurisdiction of the circuit court in the present case may well be rested upon the inability of the county court to afford to the plaintiff any adequate remedy in the regular course of administration; and the circuit court will decline to take jurisdiction in matters arising in or relating to the administration of the estates of decedents, except where special circumstances show that a complete and adequate remedy cannot be given by the county court. *Hawley v. Tesch*, 72 Wis. 299, 304; *Meyer v. Garthwaite*, 92 Wis. 571, and previous cases there cited. The cases of *Nolan v. Hazen*, 44

Minn. 478, and *Hospes v. N. W. Mfg. & Car Co.* 48 Minn.
174, 31 Am. St. Rep. 637, were both in the district court of
Minnesota, a court having the same equitable jurisdiction
as the circuit court in this state; and the case of *Estate of*
*Warren,* 52 Mich. 557, seems to proceed upon the ground that
the liability there under consideration was one at law, and
which might be enforced without the presence of other
stockholders and parties, and does not appear to be in accord
with the rule in this state. *Coleman v. White,* 14 Wis. 700.
It is apparent, therefore, that the complaint is sufficient, and
that the circuit court had jurisdiction of the subject matter
and of the action, and that the statute bar, under sec. 3844,
R. S., is not applicable to these claims.

4. It is further assigned as error that the circuit court by
its judgment awarded execution against the executors of
Cary and of Sanderson, to be levied upon and collected out
of the property and assets received by them as such execu-
tors and in their hands at the time of the commencement
of the action. The statute (sec. 3845, R. S.), in substance,
provides that no attachment or execution shall be issued
against the estate of the deceased, or the executor or admin-
istrator thereof, until the expiration of the time limited for
the payment of debts, except in certain cases not here ma-
terial to state. Whether the time limited for the payment
of debts has expired, or whether an order has been made for
such payment, the record does not show. We think that this
statute is applicable, and that, after the amount of the claims
have been established, no execution should be awarded on
the judgment, but that the judgment must be certified to the
county court, to the end that the claims established by it be
directed to be paid as claims against the estates of these re-
spective decedents, with other claims, in the order prescribed
by law. R. S. sec. 3852. The necessity for equitable aid or
relief having ceased, the powers of the county court are en-
tirely adequate to the enforcement of the claims. If the

executions, as awarded, should be enforced, it might result in giving the claimants an unfair preference over creditors of the estate. The case is also clearly within the rule stated in *Catlin v. Wheeler*, 49 Wis. 507, 519, that, when the rights of the parties have been adjudicated and determined by the proper judgment in the case, the county court may proceed, at the instance of the plaintiff or of the executors, to execute such judgment in the manner provided by the statute.

It follows, therefore, that the judgment appealed from should be affirmed, except as to the portion awarding executions against these executors, and that as to such portion it should be reversed. No costs will be awarded on these appeals, but the fees of the clerk of this court are to be paid by the respondent.

*By the Court.*— Judgment is ordered accordingly.